IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA,

vs.                                    Case Nos.:    1:12cr50/MW/GRJ
                                                     1:16cv58/MW/GRJ

DOUGLAS RAY CASTLEBERRY

## AMENDED REPORT AND RECOMMENDATION[1]

This matter is before the Court upon Petitioner Douglas Ray

Castleberry ("Petitioner")'s Motion under 28 U.S.C. § 2255 to Vacate, Set

Aside, or Correct Sentence by a person in Federal Custody and

Memorandum of Law in Support thereof (ECF Nos. 91 & 92), and the

Government's Response (ECF No. 95.) The case was referred to the

undersigned for the issuance of all preliminary orders and any

recommendations to the district court regarding dispositive matters. *See*

N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and FED. R. CIV. P.

72(b). After a review of the record and the arguments presented, the Court

concludes that Petitioner has not raised any issue requiring an evidentiary

---

[1] This Amended Report and Recommendation amends ECF No. 96 only to correct two
typographical errors.

hearing and that the § 2255 Motion should be denied. *See* Rules 8(a) and

(b) Governing § 2255 Cases.

## I.   BACKGROUND

The facts as set forth in the factual basis in support of Petitioner's

guilty plea are as follows:

> On November 1, 2012, an undercover officer with the Alachua County Sheriff's Office in Alachua County, Florida accessed a publicly available Internet chat system. Internet chat is a method of communicating by sending text messages to people in the same chat-room in real-time. The undercover officer used the screen name "funmomof2" and entered a chat room entitled "#0!!!!!!!LTLGIRLSEXCHAT." The undercover officer posed as an adult parent with two children, a four year old boy and an eleven year old girl named "Jenna." Another user with the screen name of "sidd" initiated contact with the "parent" and began a private conversation using instant messaging. During the private conversation, "sidd" asked the age of the "parent's" children, to which the "parent" replied, "I have 4m and 11f, but I'm looking for someone to teach my dau." During the chat conversation, "sidd" stated "im interested in a relationship so I would never do anything to hurt her. But the first time is still painful when it comes to penetration." Before the "parent" ended the conversation, "sidd" asked to stay in contact and provided an email address of [qaz340@yahoo.com](mailto:qaz340@yahoo.com).

> The undercover officer identified the Internet Protocol (IP) address of the user "sidd" and determined the same user was accessing another chat room. The undercover officer then forwarded an email to the email address provided by "sidd" and the officer received an e-mail back from the same address. During the ensuing emails, "sidd" advised that he was interested in teaching eleven year old "Jenna" how to engage in sexual activity, and that he would be interested in a

relationship with a girl that age. "Sidd" stated that he had previously engaged in sex with a 10 year old child, but said that he couldn't provide much information, as he promised the child's father confidentiality. "Sidd" later clarified that "I did have sex with her," referring to the 10 year old girl. "Sidd" also stated that he had some pictures and videos that he could show "Jenna" to make her feel more comfortable. When asked if there were children in the videos, "sidd" said that he did have some videos that involved adults and children, and that there were views of oral sex and penetration in the videos. "Sidd" said that the video clips that he had were short, but indicated that he would bring the pictures and videos with him when he traveled to meet the "parent's" daughter. "Sidd" also described numerous sexual acts he would perform on "Jenna." "Sidd" made several comments about his intentions to travel to meet "Jenna," to include, "I would like to meet her soon if possible," and "I would like to meet before the end of the year if possible."

Arrangements were made for "sidd" to travel to Alachua County to meet "Jenna" on November 14, 2012. "Sidd" and the "parent" exchanged cell phone numbers in order to communicate via text or phone call for travel arrangements.

The emails between "sidd" and the "parent" continued between November 1, 2012, and November 13, 2012. "Sidd" forwarded a photograph of himself to the "parent." The photograph is of Defendant Douglas Ray Castleberry.

After determining that "sidd" was the Defendant, officers conducted surveillance of his residence in Saint Marys, Georgia. On November 14, 2012, the Defendant was observed leaving his residence in Saint Marys, Georgia and driving to a grocery store parking lot in Gainesville, Florida for the purpose of engaging in sexual activity with the eleven year old child, "Jenna." The Defendant was arrested when he arrived at the parking lot. After he was taken into custody he made spontaneous statements, including "I knew I shouldn't have come," and, "how long will I be going to jail for this?"


> At the time of the Defendant's arrest, officers conducted a search and inventory of his vehicle and person. Officers located condoms, an unopened package of sharpie markers, a cell phone, and a PS3 portable gaming system. The cell phone was confirmed as the same number which had been provided by "sidd." Forensics examination of the gaming system has identified numerous images of child pornography on the system.

(ECF No. 34.) On December 18, 2012, a grand jury returned a three-count indictment charging Petitioner with: (1) using a facility and means of interstate commerce to attempt to persuade, induce and entice an individual under the age of 18 to engage in sexual activity, in violation of Title 18, United States Code, Section 2422(b) (Count One); (2) traveling in interstate commerce to engage in sex with a person under the age of 16, in violation of Title 18, United States Code, Section 2423(b) (Count Two); and (3) possession of child pornography which had been transported in interstate commerce, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2252A(b)(2) (Count Three). (ECF No. 2.)

Petitioner was arrested and arraigned on the charges on December 19, 2012. (ECF No. 8.) The Court appointed Assistant Federal Public Defender Darren Johnson to aid in Petitioner's defense. (ECF No. 11.)

Case Nos.: 1:12cr50/MW/GRJ; 1:16cv58/MW/GRJ

Petitioner entered into a plea bargain agreement in which he agreed to plead guilty to Count One in exchange for the Government's promise to dismiss Counts Two and Three. (ECF No. 32.) On April 3, 2013, Petitioner appeared before the undersigned for the purpose of considering Petitioner's entry of a guilty plea to Count One of the Indictment. (ECF No. 35.) On that date, the undersigned entered a Report and Recommendation recommending that the District Court accept the plea agreement and Petitioner's plea of guilty. *Id.* United States District Judge Mark E. Walker accepted the plea, and the Government dismissed Counts Two and Three. (ECF Nos. 35 & 67.)

The Pre-Sentence Investigation Report ("PSR") reflected that Petitioner had a total offense level of 38 and a criminal history category of I. (PSR, ECF No. 65 at ¶ ¶ 37, 42.) The PSR found that the applicable guidelines range was 235 to 293 months of imprisonment. *Id.* at ¶ 70. The PSR further found that because the minimum statutorily required term of supervised release for Count One was five years, the guidelines requirement for a term of supervised release became five years to life, pursuant to § 5D1.2(b). *Id.*

Case Nos.: 1:12cr50/MW/GRJ; 1:16cv58/MW/GRJ

The Court sentenced Petitioner to 235 months of imprisonment, a life term of supervised release, and a $100 Special Monetary Assessment on October 21, 2013 (ECF No. 66), and entered the judgment against Petitioner two days later on October 23, 2013. (ECF No. 68.)

Petitioner filed an appeal to the Eleventh Circuit Court of Appeals, arguing that the district court improperly applied a five-level upward adjustment for a prior pattern of activity involving prohibited sexual conduct with minors. (ECF No. 89.) The Eleventh Circuit issued a written opinion affirming Petitioner's sentence on February 27, 2015, and issued a mandate on March 30, 2015. (ECF No. 90.) Petitioner did not file a Petition for Writ of Certiorari with the United States Supreme Court. Petitioner filed the instant § 2255 Motion on March 3, 2016, asserting two grounds of ineffective assistance of counsel.

## II.   ANALYSIS

### A. General Legal Standard

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to Section 2255 are extremely limited. A prisoner is entitled to relief under Section

2255 if the court imposed a sentence that: (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. *See* 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'" *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). The "fundamental miscarriage of justice" exception recognized in *Murray v. Carrier*, 477 U.S. 478, 496 (1986), provides that it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a Section 2255 motion which have been resolved on direct appeal. *Stoufflet v. United States*, 757 F.3d 1236, 1239 (11th Cir. 2014); *Rozier v. United States*, 701 F.3d 681, 684 (11th Cir. 2012); *United States v. Nyhuis*, 211 F.3d 1340, 1343 (11th Cir. 2000); *Mills v. United States*, 36

F.3d 1052, 1056 (11th Cir. 1994). Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under Section 2255. *Nyhuis*, 211 F.3d at 1343 (quotation omitted). Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised. *Sanders v. United States*, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under Section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a Section 2255 motion and will be considered procedurally barred. *Lynn*, 365 F.3d at 1234–35; *Bousley v. United States*, 523 U.S. 614, 621 (1998); *McKay v. United States*, 657 F.3d 1190, 1195 (11th Cir. 2011). An issue is "'available' on direct appeal when its merits can be reviewed without further factual development." *Lynn*, 365 F.3d at 1232 n.14 (quoting *Mills*, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a Section 2255 motion unless the defendant establishes (1)

cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." *Lynn*, 365 F.3d at 1234; *Bousley*, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." *Lynn*, 365 F.3d at 1235. A meritorious claim of ineffective assistance of counsel can constitute cause. *See Nyhuis*, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. *Massaro v. United States*, 538 U.S. 500, 503 (2003); *see also United States v. Franklin*, 694 F.3d 1, 8 (11th Cir. 2012); *United States v. Campo*, 840 F.3d 1249, 1257 n.5 (11th Cir. 2016). In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and reasonable professional norm and that he was prejudiced by this inadequacy.

*Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Williams v. Taylor*, 529 U.S. 362, 390 (2000); *Darden v. United States*, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying *Strickland*, a court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs. *Strickland*, 466 U.S. at 697; *Brown v. United States*, 720 F.3d 1316, 1326 (11th Cir. 2013); *Holladay v. Haley*, 209 F.3d 1243, 1248 (11th Cir. 2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688; *see also Dingle v. Sec'y for Dep't of Corr.*, 480 F.3d 1092, 1099 (11th Cir. 2007). Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Hammond v. Hall*, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting *Strickland*, 466 U.S. at 689); *see also Chandler v. United States*, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness

of counsel's conduct); *Lancaster v. Newsome*, 880 F.2d 362, 375 (11th Cir.

1989) (emphasizing that petitioner was "not entitled to error-free

representation"). Counsel's performance must be evaluated with a high

degree of deference and without the distorting effects of hindsight.

*Strickland*, 466 U.S. at 689. To show counsel's performance was

unreasonable, a defendant must establish that "no competent counsel

would have taken the action that his counsel did take." *Gordon v. United

States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); *Chandler*,

218 F.3d at 1315. "[T]he fact that a particular defense ultimately proved to

be unsuccessful [does not] demonstrate ineffectiveness." *Chandler*, 218

F.3d at 1314. When reviewing the performance of an experienced trial

counsel, the presumption that counsel's conduct was reasonable is even

stronger, because "[e]xperience is due some respect." *Chandler*, 218 F.3d

at 1316 n.18.

With regard to the prejudice requirement, a defendant must establish

that, but for counsel's deficient performance, the outcome of the

proceeding would have been different. *Strickland*, 466 U.S. at 694. "The

likelihood of a different result must be substantial, not just conceivable."

Case Nos.: 1:12cr50/MW/GRJ; 1:16cv58/MW/GRJ

*Harrington v. Richter*, 562 U.S. 86, 112 (2011) (quoting *Strickland*, 466 U.S. at 693). For a court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369–70 (1993); *Allen v. Sec'y, Fla. Dep't of Corr.*, 611 F.3d 740, 754 (11th Cir. 2010). A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Lockhart*, 506 U.S. at 369 (quoting *Strickland*, 466 U.S. at 687).

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance. *Smith v. White*, 815 F.2d 1401, 1406–07 (11th Cir. 1987). Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the *Strickland* test. *See Boyd v. Comm'r, Ala. Dep't of Corr.*, 697 F.3d 1320, 1333–34 (11th Cir. 2012); *Garcia v. United States*, 456 F. App'x 804, 807 (11th Cir. 2012) (*citing Yeck v. Goodwin*, 985 F.2d 538, 542 (11th Cir. 1993)); *Wilson v. United States*, 962 F.2d 996, 998 (11th Cir. 1992); *Tejada v. Dugger*, 941

F.2d 1551, 1559 (11th Cir. 1991); *Stano v. Dugger*, 901 F.2d 898, 899

(11th Cir. 1990) (*citing Blackledge v. Allison*, 431 U.S. 63, 74 (1977)).

Finally, the Eleventh Circuit has recognized that given the principles

and presumptions set forth above, "the cases in which habeas petitioners

can properly prevail . . . are few and far between." *Chandler*, 218 F.3d at

1313. This is because the test is not what the best lawyers would have

done or even what most good lawyers would have done, but rather whether

some reasonable lawyer could have acted in the circumstances as defense

counsel acted. *Dingle*, 480 F.3d at 1099; *Williamson v. Moore*, 221 F.3d

1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have

been unwise in retrospect, the decision will be held to have been ineffective

assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'" *Dingle*, 480 F.3d at 1099 (quoting *Adams

v. Wainwright*, 709 F.2d 1443, 1445 (11th Cir. 1983)). The Sixth Circuit has

framed the question as not whether counsel was inadequate, but rather

whether counsel's performance was so manifestly ineffective that "defeat

was snatched from the hands of probable victory." *United States v. Morrow*,

977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is

framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance. A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief." *See* 28 U.S.C. § 2255(b); *Rosin*, 786 F.3d at 877; *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008). Not every claim of ineffective assistance of counsel warrants an evidentiary hearing. *Gordon*, 518 F.3d at 1301 (citing *Vick v. United States*, 730 F.2d 707, 708 (11th Cir. 1984)). To be entitled to a hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. *See Hernandez v. United States*, 778 F.3d 1230, 1234 (11th Cir. 2015). A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See Winthrop–Redin v. United States*, 767 F.3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need

not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon

unsupported generalizations") (internal quotation marks omitted); *Peoples*

*v. Campbell*, 377 F.3d 1208, 1237 (11th Cir. 2004). Even affidavits that

amount to nothing more than conclusory allegations do not warrant a

hearing. *Lynn*, 365 F.3d at 1239. Finally, disputes involving purely legal

issues can be resolved by the court without a hearing.

### B. Petitioner's Ground One

In his first ground for relief, Petitioner asserts his trial counsel, Darren

Johnson, rendered ineffective assistance for advising Petitioner to plead

guilty to a crime of which Petitioner is actually innocent. Petitioner believes

he is actually innocent on the grounds that "it was impossible for him to

complete the commission of the crime as there was no actual minor

involved in any human form, child, adult, or otherwise." (ECF No. 92 at 13.)

Had counsel properly investigated the facts of the case, Petitioner alleges,

counsel would have discovered that Petitioner's conduct could not have

resulted in a violation of 18 U.S.C. § 2422(b).

Petitioner further alleges counsel did not review the elements of the

crime with Petitioner and that there is insufficient evidence to satisfy the

second and third elements of the offense. Petitioner claims counsel's

ineffective assistance rendered his guilty plea involuntary.

A plea of guilty, like all waivers of constitutional rights, must be

"voluntary" and "intelligent." *Brady v. United States*, 397 U.S. 742, 748

(1970). A plea does not qualify as intelligent unless the criminal defendant

receives "real notice of the true nature of the charge against him." *Smith v.

O'Grady*, 312 U.S. 329, 334 (1941). "A guilty plea is open to attack on the

ground that counsel did not provide the defendant with 'reasonably

competent advice.' " *Cuyler v. Sullivan*, 446 U.S. 335, 344 (1980), quoting

*McMann v. Richardson*, 397 U.S. 759, 770 (1970). The two-prong

*Strickland* test applies to challenges of guilty pleas based on ineffective

assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A plea is

voluntary so long as counsel's advice falls "within the range of competence

demanded of attorneys in criminal cases." *Id.* at 56 (internal quotation

marks omitted). To prove prejudice in the context of a guilty plea, a

defendant must show a reasonable probability that, but for his attorney's

errors, he would not have pleaded guilty and would have insisted on going

to trial. *Id.* at 59.

Petitioner was convicted pursuant to 18 U.S.C. § 2422(b), which provides:

> (b) Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

Petitioner concedes that convictions for attempted enticement do not require the existence of an actual child victim, however, Petitioner maintains there must be an actual person posing as a child victim. (ECF 92 at 11-12.) Petitioner is correct in that an actual minor victim need not exist to support a conviction under § 2422(b). *United States v. Lanzon*, 639 F.3d 1293, 1299 (11th Cir. 2011); *United States v. Root*, 296 F.3d 1222, 1227 (11th Cir. 2002), *superseded by statute on other grounds*. If a defendant arranges through an adult intermediary to have sex with a supposed minor, that conduct is sufficient to support a conviction. *Lanzon*, 639 F.3d at 1299.

*Lanzon* presents a case factually analogous to this one. In *Lanzon*, the defendant chatted online with an undercover agent about having sex with a fourteen-year-old girl who was ostensibly the agent's girlfriend's

daughter. *Id.* at 1296. Although no such girl existed, the Eleventh Circuit

affirmed the defendant's conviction under § 2422(b). *Id.* at 1298-99.

The law does not support Petitioner's contention that it was "impossible" for

him to commit the crime to which he pleaded guilty under the facts of this

case. As such, Petitioner's claim that counsel rendered ineffective

assistance for advising Petitioner to plead guilty when it was "impossible"

for Petitioner to have violated § 2422(b) is meritless.

Petitioner's contention that there was insufficient evidence to satisfy

two elements of the crime is also without merit. An unconditional guilty

plea, made knowingly, voluntarily, and with the benefit of competent

counsel, generally waives all non-jurisdictional defects in the defendant's

court proceedings, including a challenge to the factual basis of the plea.

*United States v. Johnson*, 89 F.3d 778, 784 (11th Cir. 1996), *abrogated on

other grounds*. Because the record establishes Petitioner entered a

knowing and voluntary guilty plea, Petitioner's claim is waived. Moreover,

the record amply supports the plea.

During the plea colloquy, the Court explained the charge and

specifically explained each element the government would be required to

prove beyond a reasonable doubt. (ECF No. 78 at 11-12.) Petitioner

confirmed that he understood the charge against him and the elements of

the crime. *Id.* at 13. The Court then asked Petitioner:

> The Court: Okay, then, you appear to have understood what I've told you so far, so now I'm going to ask you directly, how do you plead to the charge in Count 1 of the indictment, guilty or not guilty?
>
> Mr. Castleberry: Guilty.
>
> The Court: And are you pleading guilty because you indeed are guilty of that charge?
>
> Mr. Castleberry: Yes, sir.
>
> The Court: And you now admit that you committed the acts set forth in the charge in Count 1 of the indictment?
>
> Mr. Castleberry: Yes, sir.

*Id.* at 15-16. The Court further directed the government to proffer the

facts set forth in support of the guilty plea—the facts that the

government would be required to prove if the case went to trial. The

Government then set forth the facts as to each element. *Id.* at 16-20.

The Court then asked Petitioner:

> The Court: . . . Now, Mr. Castleberry, you just heard what the Government says happened. Is that indeed what you did?
>
> Mr. Castleberry: Yes, Sir.

Case Nos.: 1:12cr50/MW/GRJ; 1:16cv58/MW/GRJ

The Court: Do you have any disagreement with what the Government says happened?

Mr. Castleberry: No, sir.

The Court: Now, are you admitting, Mr. Castleberry, that you indeed made contact through this chat room, through use of a computer, with a parent of what purported to be a child for the purpose of engaging in sexual activity with an individual who was less than 18 years old?

Mr. Castleberry: Yes, sir.

The Court: And after that contact was made via the Internet, are you admitting that you indeed traveled from St. Mary's, Georgia, to Gainesville to engage in sexual activity with an individual who you believed was less than 18 years old?

Mr. Castleberry: Yes, sir.

*Id.* at 20-21. Petitioner then confirmed that he was entering a guilty plea

freely and voluntarily and that he was not promised anything other than that

which the Government agreed to in the plea agreement. *Id.* at 21. The

Court asked Petitioner:

The Court: Lastly, Mr. Castleberry, you've been represented throughout this case by Mr. Johnson. Are you satisfied with your lawyer and the way he's represented you thus far?

Mr. Castleberry: Yes, sir.

The Court: And have you had enough time to discuss your case fully

with your lawyer and explain everything you know about your case
to your lawyer?

Mr. Castleberry: I believe so, sir.

*Id.* at 21-22. The record clearly establishes Petitioner understood the

elements of the crime, confirmed that there is sufficient evidence to support

each element, and entered the plea freely and voluntarily. For these

reasons, Petitioner fails to demonstrate ineffective assistance of counsel as

to Ground One.

### C. Petitioner's Ground Two

In his second ground for relief, Petitioner alleges the evidence against

him was illegally obtained through entrapment. He further alleges counsel

was ineffective for failing to present the defense of entrapment at either the

district court level or on appeal. Petitioner finally asserts counsel was

ineffective for advising him to plead guilty when Petitioner "had a viable

offense of entrapment." (ECF No. 92 at 21.)

To the extent Petitioner wishes to raise the defense of entrapment in

the instant Motion, he is barred from doing so. Petitioner's guilty plea

forfeited all non-jurisdictional defects and defenses, which includes the

defense of entrapment.

Case Nos.: 1:12cr50/MW/GRJ; 1:16cv58/MW/GRJ

Petitioner's claim that counsel was ineffective for advising him to plead guilty when entrapment was a "viable" defense is properly before the Court, however the claim lacks merit.

Entrapment is an affirmative defense that requires (1) government inducement of the crime, and (2) lack of predisposition on the part of the defendant to commit the crime before the inducement. *United States v. Orisnord*, 483 F.3d 1169, 1178 (11th Cir. 2007); *United States v. Ryan*, 289 F.3d 1339, 1343 (11th Cir. 2002). The defendant bears the initial burden of production as to the government inducement, and he may meet this burden by producing any evidence that is sufficient to raise a jury question that the government "created a substantial risk that the offense would be committed by a person other than one ready to commit it." *Ryan*, 289 F.3d at 1343-44, quoting *United States v. Brown*, 43 F.3d 618, 623 (11th Cir.1995). "The defendant may make such a showing by demonstrating that he had not favorably received the government plan, and the government had to 'push it' on him, or that several attempts at setting up an illicit deal had failed and on at least one occasion he had directly refused to participate." *United States v. Andrews*, 765 F.2d 1491, 1499 (11th Cir. 1985) (citations

omitted).

Predisposition is a fact-intensive and subjective inquiry, requiring the jury to consider the defendant's readiness and willingness to engage in the charged crime absent any contact with the government's agents. *Brown*, 43 F.3d at 624; *Jacobson v. United States*, 503 U.S. 540, 548-49 (1992) (holding that once government inducement is shown, "the prosecution must prove beyond reasonable doubt that the defendant was disposed to commit the criminal act prior to first being approached by Government agents."). In *United States v. Rutgerson*, the Eleventh Circuit explained that it has declined to create a "fixed list of factors" for evaluating an entrapment defense, but has posited "several guiding principles":

> Predisposition may be demonstrated simply by a defendant's ready commission of the charged crime. A predisposition finding is also supported by evidence that the defendant was given opportunities to back out of illegal transactions but failed to do so. Post-crime statements will support a jury's rejection of an entrapment defense. Existence of prior related offenses is relevant, but not dispositive. Evidence of legal activity combined with evidence of certain non-criminal tendencies, standing alone, cannot support a conviction. Finally, the fact-intensive nature of the entrapment defense often makes jury consideration of demeanor and credibility evidence a pivotal factor.

822 F.3d 1223, 1235 (11th Cir. 2016), *cert. denied*, 137 S. Ct. 2158 (2017),

quoting *Brown*, 43 F.3d at 625 (citations omitted).

Petitioner maintains he was "direct[ly] solicit[ed]" by the undercover agent, who at every turn initiated Petitioner's involvement in the crime. (ECF No. 92.) Petitioner further argues there was no evidence of his predisposition to commit the crime because despite his fifteen-year track record for participating in "fantasy and role playing" over the internet, he never commit[ed] or attempt[ed] to commit the crime of which he was convicted. *Id.* at 18.

Here, the factual basis to which Petitioner admitted establishes that Petitioner initiated contact with an undercover officer posing as a parent using the screen name "funmomof2" in a chatroom called "#0!!!!!!!LTLGIRLSEXCHAT." (ECF No. 34 at 1.) Petitioner and the "parent" began a private conversation, during which Petitioner asked the age of her children. Petitioner indicated his interest in having a "relationship" with the child. Petitioner said he would "never do anything to hurt her[,] [b]ut the first time is still painful when it comes to penetration." *Id.* Before the "parent" ended the conversation, Petitioner asked to stay in contact and provided an email address.

Case Nos.: 1:12cr50/MW/GRJ; 1:16cv58/MW/GRJ

In subsequent emails, Petitioner advised the "parent" he was interested in teaching the eleven-year-old child how to engage in sexual activity, and that he had previously engaged in sex with a ten-year-old child. Petitioner indicated he would bring videos depicting adults and children engaged in oral sex and penetration when he traveled to meet the child. Petitioner also described numerous sexual acts he would perform on the child. Petitioner expressed his intentions to travel to meet the child and that he wanted to do so soon. At a search conducted incident to Petitioner's arrest, officers located condoms, an unopened package of sharpie markers, a cell phone, and a portable gaming system. After he was taken into custody, Petitioner said: "I knew I shouldn't have come," and, "how long will I be going to jail for this?" *Id.* at 3.

Here, the facts demonstrate Petitioner made the initial contact with the "parent" and asked the age of the child. After he was told the child was eleven years old, Petitioner indicated his interest in having a sexual relationship with the child. Before the "parent" ended the conversation, it was Petitioner who asked to stay in contact and provided an email address. In later emails, Petitioner indicated his interest in performing various sexual

acts on the child. He also admitted to having sex with a ten-year-old child previously and readily proceeded to arrange to meet with the child in this case.

There is no evidence that Petitioner ever indicated he did not want to have sex with the child or expressed any hesitation, nor did Petitioner back out of the meeting. Indeed, Petitioner drove from Georgia to Florida to have sex with the child, a fact that he admitted to in open court during his guilty plea colloquy.

In light of the evidence demonstrating Petitioner's ready commission of the crime, his unwillingness to hesitate or back out of the transaction, and the existence of prior related offenses, it cannot be said that Petitioner had a viable defense of entrapment. On the contrary, the facts show the Government had ample evidence to establish predisposition. Accordingly, Petitioner fails to demonstrate that no competent counsel would have advised Petitioner to plead guilty instead of proceeding to trial on an entrapment defense.

Moreover, for the reasons discussed herein, Petitioner fails to show prejudice because he cannot demonstrate proceeding to trial with the

entrapment defense would have changed the outcome of his case. Petitioner has failed to make the requisite showing under *Strickland* to support his claim of ineffective assistance of counsel as to Ground Two.

### D. Evidentiary Hearing

To warrant an evidentiary hearing, a defendant must allege facts that, if true, would prove he is entitled to relief. Petitioner has failed to do so here. Accordingly, no evidentiary hearing is warranted.

### III.   CONCLUSION

For all of the foregoing reasons, the Court concludes that Petitioner has not shown that he is entitled to Section 2255 relief. Nor has he shown that an evidentiary hearing is warranted. Therefore, Petitioner's Motion should be denied.

### CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be

filed, even if the court issues a certificate of appealability. Rule 11(b), § 2255 Rules.

   After review of the record, the Court finds no substantial showing of the denial of a constitutional right. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the Court deny a certificate of appealability in its final order.

   The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

   Based on the foregoing, it is respectfully **RECOMMENDED** that:

1.   The Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a person in Federal Custody (ECF No. 91) should be **DENIED**.

2.    A certificate of appealability should be **DENIED**.

**IN CHAMBERS** at Gainesville, Florida, this 16th day of January, 2018.


*/Gary R. Jones*
GARY R. JONES
United States Magistrate Judge


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.**